KELLY, Circuit Judge, concurring in part and dissenting in part.
I join the court's opinion except for the latter half of Part II.B.2. The opinion acknowledges that an officer's decision to authorize a SWAT team to execute a search warrant can violate the Fourth Amendment under certain circumstances, yet it declines to opine on whether there was a constitutional violation here. The district court concluded that there are material factual disputes about whether the detectives violated Z.J.'s clearly established Fourth Amendment rights by failing to conduct an adequate investigation and by summoning a SWAT team without justification. I would affirm that conclusion for two reasons.
First, the detectives' brief investigation uncovered "no information" supporting the *693 need for a SWAT team in this case. Supra at 688. The primary suspect, Charles, was already in custody and available for questioning for several hours before detectives even contacted the SWAT team to assist with the search. No effort was made to interview him to determine whether he lived at the Bristol residence or whether the object of the search (the victim's cell phone) was located there. The detectives conducted virtually no surveillance on the Bristol residence to determine if there were other occupants present before asking the SWAT team to carry out the search. This contrasts with how the detectives conducted other searches in this case. Once detectives learned that Charles actually lived around the corner in the Winchester apartments, they immediately went to search for the phone at that location. Instead of using a SWAT team or uniformed officers, detectives simply approached Charles's residence and obtained consent to search. A year later, when it came time to search the residence of the actual culprit, the detectives again used uniformed officers instead of a SWAT team and performed the search only after informing a member of the suspect's family that a search was imminent.
Second, the district court concluded that there are genuine disputes of material fact regarding whether (1) the KCPD SWAT team has a continuing, widespread, and persistent pattern of routinely using flash-bang grenades without any regard for the safety of the occupants of a residence and (2) the Board is deliberately indifferent to this practice. The court's opinion nonetheless asserts that the detectives "would have expected" the SWAT team officers to operate within the confines of the Fourth Amendment when conducting a search. Supra at 688. But why would the detectives have that expectation if the evidence shows that KCPD's SWAT team routinely uses flash-bang grenades in reckless violation of the Constitution? The summary-judgment standard requires us to draw all reasonable inferences in favor of Z.J., not the other way around. Bradford v. Palmer, 855 F.3d 890, 892 (8th Cir. 2017).
Viewing the facts in the light most favorable to Z.J., a reasonable jury could conclude that using the SWAT team under these circumstances violated her clearly established Fourth Amendment rights. See Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The bounds of the Fourth Amendment "may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (cleaned up). At the time of the search, multiple circuits had recognized that the unwarranted use of a SWAT team can violate the Constitution. See, e.g., Estate of Smith v. Marasco, 430 F.3d 140, 149 (3d Cir. 2005) ; Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1190 (10th Cir. 2001).[6] This much should have been obvious to any reasonable detective, because a SWAT team is "an overwhelming show of force-force far greater than that normally *694 applied in police encounters with citizens," making the decision to deploy a SWAT team "largely determin[ative]" of how the search will be conducted and "the extent of the intrusion on the individual's Fourth Amendment interests." Holland, 268 F.3d at 1190. Use of such force requires adequate justification. Cf. Muehler v. Mena, 544 U.S. 93, 108, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005) (Stevens, J., concurring in the judgment) ("When officers undertake a dangerous assignment to execute a warrant to search property that is presumably occupied by violence-prone gang members, it may well be appropriate to use both overwhelming force and surprise in order to secure the premises as promptly as possible.").
Because there was no justification for calling a SWAT team and there is evidence that this particular SWAT team may have a widespread practice of using excessive force, I cannot conclude that the detectives were entitled to qualified immunity for their decision to employ the SWAT team in this case.

Although Holland analyzed a seizure, not a search, I respectfully disagree with the suggestion that this makes the case inapplicable to the search context. See supra at 690-91, 692 (Gruender, J., concurring in part and dissenting in part). The quote in Mountain Pure traces back to Segura v. United States, 468 U.S. 796, 806, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), which recognized that searches and seizures of property implicate different interests: "A seizure affects only the person's possessory interests; a search affects a person's privacy interests." Therefore, a seizure is usually "less intrusive" than a search and is more likely to be permissible absent a warrant. Id. This distinction has no relevance to excessive force cases, which are subject to the same analysis regardless of whether the case is about a search or a seizure. "The operative question in excessive force cases is whether the totality of the circumstances justifies a particular sort of search or seizure." Cty. of Los Angeles v. Mendez, --- U.S. ----, 137 S. Ct. 1539, 1546, 198 L.Ed.2d 52 (2017) (cleaned up).